IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OUTOKUMPU STAINLESS, LLC, *formerly known as* *Thyssenkrupp Stainless USA, LLC,* | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 15-00243-KD-N |
| SIEMENS INDUSTRY, INC., *successor in interest to* *Siemens Energy & Automation, Inc.,* | ) ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion to Remand (Doc. 7) filed by Plaintiff Outukumpu Stainless USA, LLC, formerly known as Thyssenkrupp Stainless USA, LLC ("Plaintiff"). This motion has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and S.D. ALA. GEN. L.R. 72(b). In reaching its decision, the Court considers the Notice of Removal (Doc. 1), the Motion to Remand (Doc. 7), Defendant Siemems Industry, Inc.'s (successor in interest to Siemens Energy & Automation Inc. ("Defendant")) Response in Opposition (Doc. 15), Plaintiff's Reply in Support (Doc. 17), Defendant's Sur-Reply (Doc. 18-1), Plaintiff's Sur-Sur-Reply (Doc. 22), and related exhibits.

Oral argument on the present motion was held before the undersigned on September 18, 2015. *See* Doc. 23. Present for the Plaintiff were Ricardo Woods, Esq. and Devin Dolive, Esq. *Id*. Present for the Defendant were Andrew Chamberlain,

Esq.; Jon Berkelhammer, Esq.; and Archibald Reeves IV, Esq. *Id*. Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Remand be **DENIED**.

## I. Background

Plaintiff's and Defendant's predecessors in interest entered into two contracts. The first contract, Contract 1034, was entered into on May 19, 2008, and provided for the

> Engineering, Manufacturing, Procurement, Supply, Supervision of Erection, Commissioning, Optimization, Training and Technical Documentation of a Stainless Melt Shop, consisting mainly of
> > One (1) Electric Arc Furnace (EAF)
> > One (1) Argon Oxygen Decarburisation Converter (AOD)
> > One (1) Continuous Caster (CCM) and
> > One (1) Slab Grinding Plant
>
> And other components defined in detail in this Contract and its Annexes Inclusive electrical equipment as specified in detail in Annexes to this Contract [*sic*]

Doc. 1-1 at 4. "Disputes arising between both parties in connection with or in the performances of" Contract 1034 which cannot be settled through consultation between the parties are subject to "arbitration for settlement." *Id*. at 64 (§ 23.1). Arbitration mandated under Contract 1034 is to take place in Düsseldorf, Germany, and be conducted "in accordance with the Rules of Arbitration and Conciliation of the International Chamber of Commerce, Paris, (ICC Rules) in the English language by three arbitrators appointed in accordance with said rules." *Id*. (§ 23.2).

The second contract, Contract 1080, was entered into on September 17, 2009, and provided for

> Design, Engineering, Manufacturing, Procurement, Preassembly, Supply, Delivery, Commissioning, Optimization, Training, Technical Documentation and Supervision Services for the Melt Shop Emissions Control System.

Doc. 4-3 at 4. Disputes arising out of or related to Contract 1080 "shall be subject to mediation, arbitration or the institution of legal or equitable proceedings" at the "sole discretion of the Buyer [Plaintiff]." *Id.* at 63 (§ 23.2). Any legal action arising under Contract 1080

> may be brought, at the election of Buyer [Plaintiff], in the Circuit Court of the State of Alabama in Mobile County, or in the United States District Court for the Southern District, Southern Division, of Alabama, and each assents and submits to the personal jurisdiction of any such courts in any such action or proceeding.

*Id.* at 70-71 (§ 28.15).

On December 17, 2014, Plaintiff filed a complaint against Defendant in the Circuit Court of Mobile County, Alabama. *See* Doc. 1-3 at 2-14. Defendant was served on March 13, 2015. *Id.* at 27. On May 8, 2015, Defendant removed the case to this Court pursuant to 9 U.S.C. § 205, which allows removal of actions whose subject matters "relates to an arbitration agreement or award falling under the [New York] Convention" so long as removal is made before trial. *Accord* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10,1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "New York Convention").[1]

On May 11, 2015, Plaintiff filed the present Motion to Remand this case to the Circuit Court for Mobile County. Doc. 7. Plaintiff argues, in sum, that the Defendant's Notice of Removal does not contain "enough information" or "factual

---

[1] At the time of removal, Defendant also filed a Motion to Compel Arbitration and Dismiss (Docs. 3, 4) that the Court does not take up here.

3

matter" to meet the FED. R. CIV. P. 8(a) requirement of a "short and plain statement of the grounds for the court's jurisdiction" as elucidated by *Ashcroft v. Iqbal* (556 U.S. 662, 678 (2009)) and *Bell Atlantic Corp. v. Twombly* (550 U.S. 544, 545 (2007)). Doc. 7 at 2, 4. Plaintiff further argues that the Contract 1080 forum-selection provision supersedes the early arbitration clause. *Id.* at 4. Contract 1080 does not provide for foreign arbitration, and without an agreement covered by the New York Convention, there is no basis for the Court to exercise jurisdiction.

Defendant's Response argues, in sum, based on *Bautista v. Star Cruises* (396 F.3d 1289, 1294 n.7 (11th Cir. 2005))[2] analysis that the Contract 1034 arbitration agreement falls under the New York Convention. Doc. 15 at 8-9. Since the arbitration agreement relates to this action, removal is appropriate under 9 U.S.C. § 205. Doc. 15 at 9-10. Defendant also points out that the § 205 removal right is "substantially broader" (*Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 843 (8th Cir. 2012) than the general removal statute and that "whenever an arbitration agreement falling under the Convention could <u>conceivably</u> affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit" (*Beiser v. Weyler*, 284 F.3d 665, 670 (5th Cir. 2002) (emphasis in original)). Doc. 15 at 10.

The Plaintiff's Reply reiterates that the main issue is a facial deficiency in the Notice of Removal. Doc. 17 at 1. Plaintiff argues that in order to meet the burden of *Iqbal* and *Twombly*, Defendant's Notice of Removal would have had to

---

[2] The four-part analysis mandated by *Bautista* shows whether an arbitration agreement falls under the New York Convention and thus whether an action may be removed pursuant to such an arbitration agreement. 396 F.3d 1289, 1294 n.7 (11th Cir. 2005) *accord* 9 U.S.C. §§ 202, 205, 206. This analysis is taken up below.

4

allege "that some of the claims in the case relate exclusively to Contract 1034 . . . and **not** to Contract 1080. Doc. 17 at 5 (emphasis in original). Plaintiff does not make it clear why this is so. Plaintiff further develops its argument that Contract 1080's subsequent forum-selection agreement modifies and supersedes the Contract 1034 arbitration agreement. *Id.* at 7-8.

Defendant's Sur-Reply argues that Contract 1034 is not superseded by Contract 1080 because the two contracts do not concern the same subject matter. Doc. 18-1 at 2. Defendant also argues that Plaintiff is estopped from arguing that Contract 1034 is superseded because Plaintiff relies on Contract 1034 in its Complaint. *Id.* at 5. According to Defendant, such reliance in the Complaint is incompatible with Contract 1034 being superseded, since Contract 1080 specifies that any prior agreement concerning the same subject matter is cancelled in its entirety. *Id.* Defendant further argues that removal jurisdiction pursuant to 9 U.S.C. § 205 applies to actions in their entirety, and Plaintiff has not attempted to argue that the Contract 1034 arbitration clause is connected to the case and falls under the New York Convention. *Id.* at 7. Defendant maintains that questions of jurisdiction and the merits of the arbitration clause must be decided separately, with issues of arbitrability being reserved for the arbitrator. *Id.* at 8.

Finally, the Plaintiff's Sur-Sur-Reply presses again the argument that the Notice of Removal is facially deficient, stating the Defendant had a duty to reference Contract 1080 when removing. Doc. 22 at 1, 3. Plaintiff contends that the two contracts "overlap" and that the issue of whether they cover the same or

different subject matter is a "false dichotomy" and that the provisions of the subsequent contract control. *Id.* at 5, 8. Plaintiff also replies that arbitrability is not an issue for arbitration. *Id.* at 10.

## II.     Standard of Review

"It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). One such Congressional grant of jurisdiction is found in 28 U.S.C. § 1332(a)(1), which provides that federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . ."

Generally, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). *See also Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010) ("If a state-court complaint states a case that satisfies federal jurisdictional requirements, a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1446(b).").[3] "Just as a plaintiff

---

[3] Like the present action, *Roe* expressly considered the propriety of removal "under the first paragraph of § 1446(b) . . . " 613 F.3d at 1061 n.4.

6

bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under [28 U.S.C. ]§ 1446(a)[,]" *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216-17 (11th Cir. 2007), and "bears the burden of proving that federal jurisdiction exists." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The district court must evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff. *Coker v. Amoco Oil Co.*, 709 F.2d 1443, 1440 (11th Cir. 1983) *citing Bobby Jones Garden Apartments*, 391 F.2d 172, 177 (11th Cir. 1968). Moreover, the law is clear that, " '[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.' " *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (quoting *Univ. of S. Ala.*, 168 F.3d at 411 (citation omitted)).

### III. Analysis

The New York Convention is an international agreement meant to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements . . . are enforced . . ." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15, 417 S. Ct. 2449 (1974) (*citing* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, S. Exec. Doc. E, 90th Cong., 2d Sess. (1968)) *accord* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T.

2517, 330 U.N.T.S. 3. Congress adopted the United States Arbitration Act, Chapter 2 ("the Act" or "the Arbitration Act"), in order to implement the Convention. *Scherk*, 417 U.S. at 520 n.15. *accord* 9 U.S.C. § 201 et seq.

The Act provides that the Convention "shall be enforced in the United States courts" and that "the district courts . . . shall have original jurisdiction" over an action or proceeding "falling under the Convention." 9 U.S.C. §§ 201, 203. Where the subject matter of an action "relates to an arbitration agreement . . . falling under the Convention" which is pending in State court, the defendant "may, at any time before the trial thereof, removed such action" to the local district court. 9 U.S.C. § 205. When such a case is removed, "[t]he procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the compliant but may be shown in the petition for removal." *Id.* Parties in such an action need not be diverse since the action "shall be deemed to arise under the laws and treaties of the United States." *See* 9 U.S.C. § 203 *accord* 28 U.S.C. § 1331. No minimum amount in controversy is required for the district court to establish jurisdiction. 9 U.S.C. § 203.

An action "relates to an arbitration agreement" (9 U.S.C. § 205) if the agreement could "conceivably affect the outcome of the plaintiff's case . . ." *Beiser v. Weyler*, 284 F.3d 665, 670; *accord Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 843 (8th Cir. 2012) (adopting this construction of § 205). The phrase "relates to" is "plainly broad" and has been "interpreted to convey sweeping removal jurisdiction . . ." *Infuturia Global Ltd. V. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133, 1138 (9th

8

Cir. 2011). The removal right that it outlines is "substantially broader" than the right in the general removal statute. *Reid*, 701 F.3d at 843 *citing Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 451 (5th Cir. 2009) (Jolly, J., dissenting). "[T]he plain and expansive language of [§ 205] embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention," and advances the "unambiguous policy in favor of recognition of arbitration agreements." *Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006).

### *A. Relationship to the New York Convention*

An arbitration agreement falls under the Convention if meets four jurisdictional requirements. *See Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3rd Cir. 2003) *citing Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982); *accord* 9 U.S.C. §§ 202, 205, 206. These four prerequisites are that:

  (1) there is an agreement in writing within the meaning of the Convention;
  (2) the agreement provides for arbitration in the territory of a signatory of the Convention;
  (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and
  (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005) *citing Std. Bent Glass Corp.*, 333 F.3d at 449.

The first requirement of an "agreement in writing" is met by the Contract

1034 arbitration clause. An "agreement in writing" is defined by the Convention as "an arbitral clause in a contract or an arbitration agreement, signed by the parties . . ." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *supra*, Article 2, section 2. The Contract 1034 arbitration clause fits squarely within this meaning. *See* Doc. 1-1 at 64 (§ 23.2).

The second requirement of the agreement providing for arbitration in the territory of a Convention signatory is also met. The Contract 1034 arbitration agreement provides for arbitration in Düsseldorf, Germany. *Id.* Germany is a Convention signatory. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *supra*, Note by the Department of State (Dec. 29, 1970).

The third requirement, that the agreement arise out of a legal relationship which is considered commercial, is also met. The arbitration agreement is found in a complex contract negotiated and agreed to for the purpose of providing numerous components of a stainless melt shop, valued by the parties at $133,561,811.00. Doc. 1-1 at 4, 21, 64 (Subject, § 5.2, § 23.2).

The fourth requirement is met in the second clause, calling for a "reasonable relationship" between the commercial agreement and one or more foreign states. The first clause of the fourth requirement (calling for a party who is not an American citizen) is not met since both parties are citizens of the United States.[4]

---

[4] Plaintiff is organized as an LLC. Doc. 1-3 at 1. The citizenship of an LLC is the citizenship of its members. *Rolling Greens MHP, LP v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). The only member of Outokumpu Stainless USA, LLC, is Outokumpu Americas, Inc., a Delaware corporation with its principal place of business in Alabama. Defendant Siemens Industry, Inc., is a Delaware corporation with its principal place of business in Georgia. Doc. 1-3 at 1. There is no diversity between the parties. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) *citing Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996).

*See* Doc. 1-3 at 1. However, the requirement is met by either subpart. Contract 1034 was the product of extensive negotiations which took place in Germany and Austria and was signed in Germany. Doc. 1-2 at 4-5; Doc. 1-3 at 16 (§ 2.2.11). The contract is governed by German law and requires arbitration to take place in Germany. Doc. 1-3 at 64 (§§ 23.2, 23.5). Thus, the commercial agreement has a "reasonable relation" with one or more foreign states. *See Bautista*, 396 F.3d at 1294 n.7. Because all four jurisdictional prerequisites are met, the arbitration agreement between Plaintiff and Defendant "falls under" the Convention. *See id; Std. Bent Glass Corp.*, 333 F.3d at 449.

### B.  *9 U.S.C. § 205 Removal Jurisdiction*

Defendant has met the requirements for removal pursuant to 9 U.S.C. § 205. Defendant timely filed its Notice of Removal. *See* 9 U.S.C. § 205 (allowing removal "any time before the trial") *and* Doc. 1-3 at 48 (showing that Defendant had until May 11, 2015 (three days after removal) to answer the Complaint). Defendant has clearly stated the ground for removal in its Notice of Removal *See* 9 U.S.C. § 205 ("the ground for removal provided in this section . . . may be shown in the petition for removal") *and* Doc. 1 at 1-3 (indicating that the action is removed from state court based on 9 U.S.C. § 205 and an arbitration agreement between the parties). This pleading by Defendant satisfies the Fed. R. Civ. P. 8(a) requirement for "a short and plain statement of the grounds for the court's jurisdiction." *See also* 28 U.S.C. § 1446(b). The Notice of Removal states that the action is removed based on an arbitration agreement between the parties, specifies how the arbitration

11

agreement came into being and how it relates to the case, and completes the *Bautista* analysis showing that the arbitration agreement falls under the New York Convention. Doc. 1 at 1-4. These allegations provide "sufficient factual matter" for the Court to determine whether it has jurisdiction. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.

Plaintiff is correct that the Notice of Removal does not make reference to Contract 1080 and its forum-selection clause. *See* Doc. 1 *generally*; Doc. 7 at 1-2. However, Plaintiff has not made clear why this makes the Notice of Removal deficient where it otherwise sufficiently pleads a basis for the Court's removal jurisdiction. The Contract 1080 forum-selection clause may impact remand, but it has not been shown that its existence makes the Notice of Removal deficient.

The analysis above shows that the Contract 1034 arbitration agreement between the parties falls under the Convention. This agreement relates to the case, as Contract 1034 is cited by the Plaintiff in its Complaint, including incorporating it by reference into each claim. Doc. 1-3 at 4-5; 7-12. Since the Complaint relies so heavily on Contract 1034, the arbitration agreement in that contract will "conceivably affect the outcome of the plaintiff's case . . ." *Beiser*, 284 F.3d at 670 *accord* 9 U.S.C. § 205. Thus, the Court has subject-matter jurisdiction over the case pursuant to 9 U.S.C. § 205.

### C. Contract 1080

>  i.   *Relationship Between Contracts*

In support of remand, Plaintiff argues that the arbitration clause in Contract

12

1034 is superseded by the subsequent forum-selection clause in Contract 1080. Doc. 17 at 7-8. "When parties execute successive agreements and the 'two agreements cover the same subject matter and include inconsistent term, the later agreement supersedes the earlier agreement.' " *Cavalier Mfg., Inc. v. Clarke*, 862 So. 2d 634, 641 (Ala. 2003) *citing CMI Int'l, Inc. v. Internet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002). However, "an entirely separate and distinct contract is not superseded by a later contract, even one which contains an integration clause." *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 66 F.3d 862, 866 (7th Cir. 1995) *citing Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992); *accord Drinkard v. Wal-Mart Stores, Inc.*, No. CV-96-J-291, slip op. at 9-10 (N.D. Ala. Feb. 12, 1999) *aff'd* 200 F.3d 821 (11th Cir. 2000) (table) (analyzing whether two contracts cover the same subject matter).

Contract 1034 and Contract 1080 do not cover the same subject matter. Contract 1080 covers only the "Melt Shop Emissions Control System." Doc. 4-3 at 4. Contract 1034 covers other components of the Melt Shop, which are specifically described, but does not mention the Emissions Control System. Doc. 1-1 at 4. The contracts have separate consideration. *See* Doc. 1-1 at 21 (§§ 5.1, 5.2); Doc. 4-3 at 24-25 (§§ 5.1, 5.2). The Court appreciates that the systems covered by each contract work together in the operation of the Melt Shop. *See* Doc. 17 at 4 n.2. However, traditional contract-interpretation principles call for construing a contract by looking to the intent of the parties as derived from the objective meaning of the words of the contract. *Feaz v. Well Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir.

2014) *citing Moore v. Pa. Castle Energy Corp.*, 89 F.3d 791, 795-96 (11th Cir. 1996). "Extrinsic evidence of the parties' subjective understanding is not consulted unless the contract is ambiguous." *Id.* Here, the separate subjects covered are clear from the faces of the two contracts. The physical real-world relationship of the components provided under the contracts is extrinsic evidence that is unnecessary to the analysis of these unambiguous contracts.

Several other factors enforce that these are separate and distinct contracts. Each contract states that it is the only agreement on its respective subject matter. Doc. 1-1 at 71 (§ 28.10) ("The Parties declare that this Contract constitutes the whole and complete agreement concerning the deliveries and service described herein and that there [are] no other oral or written provisions dealing with the same subject matter"); Doc. 4-3 at 69 (§ 28.2) ("This Contract . . . constitutes and contains the entire and only agreement between the parties . . . relating to the subject matter hereof."). Also, if Contract 1034 was superseded, no part of it would be in force. Contract 1080 states that it

> supersedes and cancels any and all pre-existing or previous agreements, discussions, negotiations, offers, proposals, bids, quotations, terms, conditions, specifications and or understandings between the parties relating to the subject matter hereof.

Doc. 4-3 at 69 (§ 28.2). If the two contracts covered the same subject matter, Contract 1034 would be canceled in its entirety. However, Plaintiff signed a certificate of acceptance for the work done on Contract 1034 on April 3, 2013, two months after accepting the work done under the subsequent Contract 1080 on February 7, 2013. Doc. 1-2 at 10 (¶38). This indicates that both contracts were in

14

force after Contract 1080 was signed on September 17, 2009. *See* Doc. 4-3 at 4.

Plaintiff argues that rather than two contracts covering the same subject matter or not, a third option is possible: that the two contracts "overlap," being the " 'same' in some places and 'different' in others." Doc. 22 at 5. However, Plaintiff offers no legal authority for this possibility. *Id.* The Court appreciates that the work covered by Contract 1034 and the work covered by Contract 1080 physically connect. *See id.* However, this does not mean that the two contracts are legally connected. Plaintiff offers no authority for the contention that two contracts may cover different subject matters and still overlap. *See id. compare Cavalier Mfg., Inc.*, 862 So. 2d at 641 *citing CMI Int'l, Inc.*, 649 N.W.2d at 812. The superseding of the arbitration clause that Plaintiff argues for is only appropriate where they actually cover the same subject matter, not merely where they provide for structures that will occupy the same building. *See GCIU Employer Retirement Fund*, 66 F.3d at 866 *citing Phillips*, 978 F.2d at 311.

In fact, the undersigned concurs with Defendant that Plaintiff is estopped from arguing that the Contract 1034 arbitration clause is superseded. Plaintiff relies on the terms of Contract 1034 in its Complaint and alleges deficiencies in the systems covered by Contract 1034. Doc. 1-3 at 4-6 (¶¶12-13, 16-17). Plaintiff incorporates these allegations into each of its discreet claims, including Count I, which alleges breach of both contracts. *Id.* at 7-12 (¶¶22-59). " '[A] party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then [repudiate] it when it works to its disadvantage.' " *Georgia Power Co. v. Partin,*

15

727 So. 2d 2, 7 (Ala. 1998) *quoting A.L. Williams & Associates, Inc. v. McMahon*, 697 F.Supp. 488, 494 (N.D. Ga. 1988). In other words, a party is prevented from making a claim under a contract while also claiming that an arbitration agreement in the same contract does not apply to them. *Ritter v. Grady Automotive Group, Inc.*, 973 So. 2d 1058, 1066 (Ala. 2007). Since Plaintiff claims a breach of Contract 1034, it may not claim that only the arbitration agreement has been superseded.

  *ii.*  *Conflict Between Contracts*

Two distinct contracts remain in force between the parties which are both relevant to this action. Contract 1034 contains an arbitration agreement that falls under the New York Convention. By law, this allows for removal to this Court.

Contract 1080 states that legal action

> may be brought, at the election of Buyer [Plaintiff], in the Circuit Court of the State of Alabama in Mobile County, or in the United States District Court for the Southern District, Southern Division, of Alabama, and each assents and submits to the personal jurisdiction of any such courts in any such action or proceeding.

Doc. 4-3 at 70-71 (§ 28.15). It is necessary to determine whether this clause constitutes a waiver on the part of Defendant of its right to remove. Where removal is based "solely on diversity jurisdiction, ordinary contract principles govern a contractual waiver;" a contractual removal waiver need not be "clear and unequivocal." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999). However, removal here is not based on diversity jurisdiction. Doc. 1 *generally*. Where removal is based on the Arbitration Act, the Third and Fifth Circuits have found that contractual waiver of the right of removal must be "clear and

16

unequivocal."[5] *Ensco Intern., Inc.*, 579 F.3d at 443 *accord Suter v. Munich Reinsurance Co.*, 223 F.3d 150 (3rd Cir. 2000). "[A] party may clearly and unequivocally waive its removal rights: '[1] by explicitly stating that it is doing so, [2] by allowing the other party the right to choose venue, or [3] by establishing an exclusive venue within the contract.'" *Ensco Intern., Inc.*, 579 F.3d at 443 *quoting City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004). The Contract 1080 forum-selection clause does not explicitly state that it is waiving the right to remove. Doc. 4-3 at 70-71 (§ 28.15). Application of the other two methods of waiving jurisdiction is inappropriate here, where the arbitration agreement at issue is in a separate contract. Interpreting the selection

---

[5] While the Eleventh Circuit has not spoken on issue of waiver of Arbitration Act removal, it has favorably cited the Third Circuit's standard for a removal waiver pursuant to the Foreign Sovereign Immunities Act (FSIA). *Snapper, Inc. v. Redan*, 171 F.3d at 1261 n.21. A standard calling for an "unequivocal" waiver for cases removed pursuant to the FSIA is followed by the Third, Sixth, and Ninth Circuits. *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation*, 15 F.3d 1230, 1243 (3rd Cir. 1994); *In re Delta American Re Ins. Co.*, 900 F.2d 890, 893 (6th Cir. 1990); *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989). This higher standard is called for by Congress's "strong preference for adjudication of claims against foreign states in the federal court system." *In re Texas*, 15 F.3d at 1243. This preference is driven by international relation considerations (*Id.* at 1240) and is "best served by the development, *in federal court*, of a uniform body of law on sovereign immunity . . ." *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1218 n.15 (3rd Cir. 1991)(emphasis in original).

Similar Congressional considerations underpin the Arbitration Act. The purpose of the Act was "to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory states." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 154 (3rd Cir. 2000) *quoting McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199, 1207 (5th Cir. 1991). The Act "demonstrates the firm commitment of the Congress to the elimination of vestiges of judicial reluctance to enforce arbitration agreements, at least in the international context." *Suter*, 223 F.3d at 155 *quoting McCreary Tire & Rubber Co. v. Ceat*, 501 F.2d 1032, 1037 (3rd Cir. 1974). Indeed, "concerns of international comity, respect for the capacities of foreign transnational tribunals, and sensitivity to the need of the internal commercial system for predictability in the resolution of disputes" merits special consideration for international arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629, 105 S.Ct. 3346 (1985). "Similarities between the removal statutes in the FSIA and the [Arbitration Act] indicate that Congress [] sought unity [of judicial interpretation] by channeling [Arbitration Act] cases into federal courts." *McDermott Intern. Inc.*, 944 F.2d at 1212 *citing* 9 U.S.C. § 205 *and* 28 U.S.C. § 1441(d). The Eleventh Circuit has stated that the presence of such a federal interest would call for analysis as to which standard should apply. *Snapper, Inc.*, 171 F.3d at 1261 n.15.

17

of an appropriate venue in one contract to waive the right to remove an action under an earlier separate contract would undermine Congress's purpose of "predictable enforcement of arbitral contracts and awards by foreign governments." *See Suter*, 223 F.3d at 159 *compare Scherk*, 417 U.S. at 520 n.15. The Arbitration Act establishes a "national policy favoring arbitration when the parties contract for that mode of dispute resolution" *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Such a policy would not be served by construing a forum-selection clause in a separate contract to waive the right of Arbitration Act removal. Thus, the forum-selection clause does not waive the right of the Defendant to remove under an arbitration agreement in a separate and still-in-force contract.

The right to remove under 9 U.S.C. § 205 is a broad grant of jurisdictional authority. *Reid*, 701 F.3d at 843. This right of removal applies to the entire action, not merely the claims based on the document containing the arbitration agreement. 9 U.S.C. § 205 *accord Beiser v. Weyler*, 284 F.3d 665, 670. The district courts' supplemental jurisdiction under the Arbitration Act extends to issues which may not be subject to arbitration, so long as some part of the action is affected by an arbitration agreement. *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 393-94 (4th Cir. 2012). Since the Contract 1034 arbitration agreement will substantially affect the outcome of Plaintiff's claims, the entirety of the present action falls within the jurisdiction of this Court. *See id.*

## IV.     Conclusion

In accordance with the above-stated analysis, the undersigned **RECOMMENDS** that the Motion to Remand be **DENIED**.

## V.     Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. GEN. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 19th day of October 2015.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**